**Electronically Filed
Supreme Court
SCWC-18-0000099
15-FEB-2023
07:56 AM
Dkt. 25 MO**

SCWC-18-0000099 and SCWC-18-0000712

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---

WILMINGTON SAVINGS FUND SOCIETY, FSB,
DOING BUSINESS AS CHRISTINA TRUST,
NOT IN ITS INDIVIDUAL CAPACITY,
BUT SOLELY AS TRUSTEE FOR BCAT 2015-14BTT,
Respondent/Plaintiff-Appellee,

vs.

ISABELO PACPACO DOMINGO; MICHELE ELANOR DOMINGO,
Petitioners/Defendants-Appellants,

and

BANK OF AMERICA, N.A.; HALEWILI PLACE COMMUNITY ASSOCIATION,
Respondents/Defendants-Appellees.

---

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000099; CAAP-18-0000712; CIV. NO. 13-1-202K)

MEMORANDUM OPINION
(By: Recktenwald, C.J., Nakayama, McKenna, Wilson, and Eddins, JJ.)

## I.    INTRODUCTION

This case arises from a foreclosure proceeding.  On October 7, 2022, Petitioners/Defendants-Appellants Isabelo Pacpaco Domingo and Michele Elanor Domingo (the Domingos) filed

an application for writ of certiorari, challenging the Intermediate Court of Appeals' (ICA) August 26, 2022 amended summary disposition order (Amended SDO). The ICA dismissed the Domingos' appeal as moot.

On March 13, 2013, Bank of America, N.A. (Bank of America) filed a complaint in the Circuit Court of the Third Circuit (circuit court) against the Domingos, alleging that Bank of America was entitled to foreclosure of the mortgage executed by the Domingos. Bank of America subsequently assigned its interest in the note to Respondent/Plaintiff-Appellee Wilmington Savings Fund Society, FSB, Doing Business as Christina Trust, Not in its Individual Capacity, But Solely as Trustee for BCAT 2015-14BTT (Wilmington). Wilmington was then substituted as the plaintiff in the foreclosure proceeding.

After the circuit court denied Wilmington's initial motion for summary judgment, Wilmington filed a renewed motion for summary judgment, which the circuit court granted. Wilmington then purchased the property at the foreclosure auction and, while the Domingos' appeal was pending, sold the Property to BBNY REO LLC, a Florida Limited Liability Company (BBNY). The Domingos did not post a supersedeas bond or otherwise obtain a stay, but the Domingos did file a separate complaint for wrongful foreclosure.

2

During the pendency of the Domingos' appeal, Wilmington filed a motion to dismiss in the ICA, arguing that the Domingos' appeal was moot because the property was sold to BBNY, a third-party, good-faith purchaser. The Domingos disputed that BBNY was a third-party, good-faith purchaser. The ICA agreed with Wilmington, determined that BBNY was a third-party, good-faith purchaser, and dismissed the Domingos' appeal as moot.

On certiorari, the Domingos raise three arguments. First, the Domingos argue that the ICA erroneously determined the property was conveyed to a third-party, good-faith purchaser because of the Domingos' pending wrongful foreclosure action. Second, the Domingos contend that the ICA mistakenly determined no effective relief can be granted to the Domingos because of the Domingos' pending wrongful foreclosure action. Third, the Domingos assert that the ICA erroneously relied on new evidence to determine BBNY was a third-party, good-faith purchaser.

The Domingos' third argument has merit. The ICA improperly relied on new evidence submitted with Wilmington's motion to dismiss to determine that BBNY was a third-party, good-faith purchaser, which was a disputed factual issue. Instead of making a factual determination that BBNY was a third-party, good-faith purchaser, the ICA should have temporarily remanded the case to the circuit court to make such a

determination.  Accordingly, we vacate the ICA's August 26, 2022 Amended SDO, which dismissed the Domingos' appeal as moot, because the ICA should have temporarily remanded the case to the circuit court for an evidentiary hearing to determine whether BBNY was a third-party, good-faith purchaser.

## II.  BACKGROUND

### A.  Relevant Circuit Court Proceedings

On March 13, 2013, Bank of America filed a "Complaint for Foreclosure" (Complaint) in the circuit court.  The Complaint alleged as follows.  The Domingos owned property in Kailua-Kona, Hawai'i (the Property).  On or about February 15, 2007, Isabelo Pacpaco Domingo executed and delivered a promissory note in the amount of $625,500.00 (the Note) to SecurityNational Mortgage Company (Security National).  In addition, Michele Elanor Domingo executed and delivered a mortgage (the Mortgage) to Mortgage Electronic Registration Systems, Inc., solely as nominee for Security National.  On March 12, 2012, the mortgagee's interest in the Mortgage was assigned to Bank of America.

On November 3, 2016, Bank of America filed a "Non-Hearing Motion for Order Substituting [Wilmington] as Plaintiff and Real Party in Interest Herein" (Motion to Substitute).  In a declaration attached to the motion, Bank of America's counsel noted that the Mortgage was assigned from Bank of America to

4

Wilmington on July 11, 2016.  The circuit court issued an order granting the Motion to Substitute on November 25, 2016.[1]

On July 17, 2017, Wilmington filed a "Motion for Summary Judgment and for Interlocutory Decree of Foreclosure" (Motion for Summary Judgment), which the Domingos opposed.  In its Motion for Summary Judgment, Wilmington admitted that Bank of America lost the original Note and "executed a Lost Note Affidavit establishing [Bank of America] was entitled to enforce the Note at the time it was lost."[2]  The circuit court held a hearing on the Motion for Summary Judgment on August 8, 2017.  The circuit court denied Wilmington's Motion for Summary Judgment because genuine issues of fact existed with respect to the lost note.[3]

On December 1, 2017, Wilmington filed a "Renewed Motion for Summary Judgment and for Interlocutory Decree of Foreclosure" (Renewed Motion for Summary Judgment), which the Domingos opposed.  That same day, the Domingos filed their own motion for summary judgment, which Wilmington opposed.

---

[1]    The Honorable Ronald Ibarra presided.

[2]    Although the lost note raises several issues, those issues are not relevant to the disposition of the Domingos' application for writ of certiorari.

[3]    The Honorable Henry T. Nakamoto presided.

The circuit court conducted a hearing on Wilmington's Renewed Motion for Summary Judgment and the Domingos' motion for summary judgment on December 27, 2017.  Then, after Wilmington and the Domingos filed proposed Findings of Fact and Conclusions of Law, the circuit court issued "Findings of Fact and Conclusions of Law; Order Granting Plaintiff's Renewed Motion for Summary Judgment and for Interlocutory Decree of Foreclosure Filed December 1, 2017" on January 29, 2018.[4]  The circuit court concluded that Wilmington owned and was entitled to foreclose the Mortgage, and ordered the Property to be sold at a public auction.

Wilmington then purchased the Property at the foreclosure sale, which the circuit court confirmed.  While the Domingos' appeals were pending, Wilmington sold the Property to BBNY.  The Domingos did not post a supersedeas bond or otherwise obtain a stay.  The Domingos filed a complaint for wrongful foreclosure and quiet title on October 1, 2018.

B.   ICA Proceedings

1.   Opening Brief

On February 20, 2018, the Domingos filed a notice of appeal in CAAP-18-0000099.[5]  The Domingos filed an opening brief

---

[4]     The Honorable Robert D.S. Kim presided.

[5]     On September 14, 2018, the Domingos filed a notice of appeal in CAAP-18-0000712.  The appeals were consolidated.  After the appeals were

on June 4, 2018. The Domingos asserted one point of error, contending that the circuit court erroneously denied "the Domingos' motion for summary judgment, and [erred] in granting summary judgment in favor of [Wilmington] -- who admitted that it was never in possession of the original promissory note -- in violation of the clear and unambiguous language of [Hawai'i Revised Statutes (HRS) §] 490:3-309."

The Domingos argued that Wilmington admitted it was not the holder of the Note and that Bank of America lost the Note before Wilmington purchased the loan. The Domingos therefore asserted that Wilmington "could not prove the existence of the promissory note" or "that it was entitled to enforce the promissory note."[6]

The Domingos maintained that Wilmington "did not establish it was entitled to enforce the note" pursuant to HRS §§ 490:3-301 and 490:3-309. The Domingos pointed out that Wilmington alleged that prior-plaintiff Bank of America assigned the mortgage to Wilmington on June 16, 2016, and the circuit court subsequently entered an order allowing Wilmington to substitute as plaintiff. The Domingos asserted that Wilmington

consolidated, the parties were ordered to "file all documents related to [both] appeals in CAAP-18-0000099."

[6] The Domingos noted that the circuit court denied Wilmington's earlier motion for summary judgment filed on July 17, 2017, because Wilmington admitted Bank of America lost the Note before Wilmington acquired the loan.

conceded "that Bank of America was never able to transfer the note to it."

According to the Domingos, Wilmington was not entitled to enforce the Note under HRS § 490:3-301 because Wilmington was not in possession of the original note when it was lost. The Domingos also contended that Wilmington was not "the holder of the note, or a nonholder in possession of the note who has the rights of a holder under [HRS §] 490:3-301." Citing to <u>Bank of Am., N.A. v. Reyes-Toledo</u>, 139 Hawai'i 361, 371 n.17, 390 P.3d 1248, 1258 n.17 (2017), the Domingos reiterated that Wilmington was not entitled to foreclose the mortgage because Wilmington was not entitled to enforce the Note.[7] The Domingos therefore asserted that the circuit court improperly granted Wilmington's Renewed Motion for Summary, and that the Domingos' motion for summary judgment should have been granted.

2. **Answering Brief**

Wilmington filed an answering brief on August 15, 2018. Wilmington disagreed with the Domingos' arguments for the following two reasons. First, Wilmington argued that "HRS § 490:3-309 permits the enforcement of a lost note by an assignee of the entity who lost the note . . . ." Second,

---

[7] The Domingos presented other arguments, which are not relevant to disposition of the Domingos' application for writ of certiorari, regarding why Wilmington was not entitled to enforce the lost note and why the circuit court improperly granted summary judgment in favor of Wilmington.

Wilmington argued that it was "entitled to enforce the note in this case pursuant to the doctrine of equitable subrogation, in equity, and based upon breach of contract."

### 3. Wilmington's Motion to Dismiss

On April 1, 2022, Wilmington filed a "Motion to Dismiss Defendant-Appellants Isabelo Pacpaco Domingo and Michele Elanor Domingo's Appeal Filed February 21, 2018" (Motion to Dismiss) pursuant to Hawaiʻi Rules of Appellate Procedure Rule 27 (2016).[8]  Wilmington argued that "the Domingos' appeal is moot" because the Property's title was transferred to a third-party, good-faith purchaser.

Citing to Bank of N.Y. Mellon v. R. Onaga, Inc., 140 Hawaiʻi 358, 370, 400 P.3d 559, 367 (2017), Wilmington maintained that "[a]n Appellant challenging a foreclosure must post a supersedeas bond or otherwise obtain a stay" and "[a]n Appellant 'who has failed to obtain a stay by posting a bond, may not attack a good-faith purchaser's title to the property purchased at a judicial sale and confirmed by court order.'"  Wilmington noted that the Domingos did not post a supersedeas bond or obtain a stay and that Wilmington purchased the Property at a judicially supervised sale.  Wilmington then "sold its interest

---

[8]    Attached to the Motion to Dismiss were a "Declaration of Selene Finance, LP," a "Declaration of BBNY," a "Declaration of David B. Rosen," and "Exhibits A-E."

in the Property to" BBNY.  According to Wilmington, BBNY was a third-party, good-faith purchaser and the Domingos could not contest "BBNY's title to the Property."[9]

Wilmington further noted that the Property's Certificate of Title was certified in favor of Wilmington before it sold the property to BBNY, which demonstrated the Domingos had no interest in the Property and Wilmington was entitled to sell the Property to BBNY.  According to Wilmington, the fact that it purchased the Property at the foreclosure sale and subsequently sold the Property to BBNY further demonstrated that the Domingos' appeal was moot.  Wilmington thus reiterated that there was no effective remedy and the Domingos' appeal was moot.

On April 6, 2022, the Domingos filed an opposition to Wilmington's Motion to Dismiss.  The Domingos argued that, inter alia, the ICA "is not a court where evidence can be taken," and the case must be remanded to the circuit court for an evidentiary hearing to determine whether BBNY was a third-party, good-faith purchaser.  The Domingos further contended that the ICA's review on appeal should be based only on the record, and the sale of the Property to BBNY is not in the record.

---

[9]     Wilmington maintained that "title to the Property was recorded in BBNY's name on January 4, 2022, in the Land Court."

### 4. ICA Amended Summary Disposition Order

On August 26, 2022, the ICA issued an Amended SDO.[10] The ICA dismissed the Domingos' appeal as moot. The ICA noted that the Domingos did not "obtain a supersedeas bond and thus failed to obtain a stay pending this appeal." The ICA also noted that "it is the appellant's burden to seek a stay if post-appeal transactions could render the appeal moot."

Citing to City Bank v. Saje Ventures II, 7 Haw. App. 130, 133, 748 P.2d 812, 814 (1988),[11] the ICA pointed out that "[t]he general rule is that the right of a good faith purchaser to receive property acquired at a judicial sale cannot be affected by the reversal of an order ratifying the sale where a supersedeas bond has not been filed" unless "the reversal is based on jurisdiction grounds or where the purchaser is the mortgagee [because] he 'does not free himself from the underlying dispute to which he is a party.'"[12]

---

[10]    The ICA issued a summary disposition order (SDO) on July 14, 2022, which dismissed the Domingos' appeal as moot. On July 25, 2022, the Domingos filed a motion for reconsideration. On August 26, 2022, the ICA issued an "Order Granting in Part and Denying in Part Motion for Reconsideration." The ICA granted the Domingos' motion for reconsideration with respect to section II.B of the SDO. Section II.B of the SDO is not relevant to the Domingos' application for writ of certiorari.
        The ICA's SDO and Amended SDO both concluded that the Domingos' appeal should be dismissed as moot.

[11]    Citing to Bank of N.Y. Mellon v. R. Onaga, Inc., 140 Hawai'i 358, 367, 400 P.3d 559, 568 (2017), the ICA noted that this court adopted the rule from City Bank v. Saje Ventures II, 7 Haw. App. 130, 748 P.2d 812 (1988).

[12]    In City Bank, the ICA "noted there was nothing to indicate the third-party purchaser was not a good-faith purchaser and there was no stay of the confirmation order, and thus the appeal was deemed to be moot."

11

The ICA acknowledged that the instant case was distinguishable from Onaga because the third-party, good-faith purchasers in Onaga "obtained the property directly from the foreclosure sale."  However, citing to DB Private Wealth Mortg., Ltd. v. Bouley, 138 Hawai'i 141, 377 P.3d 1059 (App. 2016), the ICA noted that Wilmington purchased the Property at the foreclosure sale and subsequently sold it to BBNY, and concluded that BBNY is a third-party, good-faith purchaser.

The ICA pointed out the Domingos argued that Wilmington did not explain how BBNY is a third-party, good-faith purchaser.  The ICA disagreed and stated:

> Wilmington has provided, inter alia, a declaration by William J. Bymel, manager of BBNY (Bymel Declaration). Bymel attests that BBNY entered into an agreement to purchase and did purchase the subject property from Wilmington.  Bymel further attests that BBNY is not affiliated with or otherwise related to or connected to Wilmington or its loan servicer, Selene Finance, LP, and that the price and terms of the purchase were negotiated at "arms-length."  The Bymel Declaration indicates that BBNY is a good-faith purchaser and the Domingos fail to show otherwise.  See City Bank, 7 Haw. App. At 133, 748 P.2d at 814-15 (noting that the purchaser of the property was a third-party not involved in the case and "[t]here is nothing in the record to indicate that [the third-party purchaser] was not a good faith purchaser"); see also [Lathrop v. Sakatani, 111 Hawai'i 307, 313-14, 141 P.3d 480, 486-87 (2006)] (noting in an appeal from an order expunging a lis pendens that "it is appellant's burden to seek a stay if post-appeal transactions could render the appeal moot"

---

The ICA correctly pointed out that "[t]he general rule is that the right of a good faith purchaser to receive property acquired at a judicial sale cannot be affected by the reversal of an order ratifying the sale where a supersedeas bond has not been filed."  However, the Domingos' failure to post a supersedeas bond is not relevant on certiorari because mortgagee Wilmington purchased the Property from the foreclosure sale, which is an exception to the general rule.  In addition, the Domingos explicitly argue that BBNY was not a third-party, good-faith purchaser.  Thus, the ICA should have temporarily remanded the case to the circuit court to determine whether BBNY was a third-party, good-faith purchaser.

and holding that a completed sale of the subject property rendered the appeal moot).

Citing to Onaga, 140 Hawai'i at 367 n.13, 400 P.3d at 568 n.13, the ICA noted that this court stated:

> [w]hen the Ferraras purchased the Property, the circuit court had already determined in the consolidated proceedings that BONY had a first priority lien on the Property. Thus, at the time of the purchase, there would not have been an "infirmity in the title" based on Onaga's mortgage.

The ICA pointed out that "[h]ere, when BBNY purchased the subject property, the Circuit Court had already issued its foreclosure decree via its Foreclosure Order and Foreclosure Judgment, and confirmed the foreclosure sale via the Confirmation Order and Confirmation Judgment." The ICA determined that "at the time BBNY purchased the property from Wilmington, there was no 'infirmity in the title' based on the Domingos' mortgage to bar BBNY from purchasing the property in good-faith." The ICA thus concluded that no effective relief could be granted to the Domingos and dismissed the Domingos' appeal as moot.[13]

## C.   Application for Writ of Certiorari

The Domingos filed a timely application for writ of certiorari on October 7, 2022. As relevant here,[14] the Domingos

---

[13]   The Amended SDO was actually an order of dismissal because the ICA dismissed the Domingos' appeal after Wilmington filed the Motion to Dismiss, and because the ICA expressly stated the "appeal is dismissed as moot." (Emphasis added.) Thus, the ICA was not required to issue a judgment on appeal. See Hawai'i Rules of Appellate Procedure Rule 36(b)(1) (2016).

13

argue that the ICA erroneously "adjudicate[ed] a contested factual issue based upon new evidence not contained within the record on appeal."  The Domingos note that "in dismissing these appeals, the ICA relied upon its unpublished decision in [Bouley] as justification for considering Wilmington's evidence."  The Domingos contend that "Bouley is entirely distinguishable."  According to the Domingos, "Bouley did not involve a motion to dismiss an appeal based upon new evidence presented for the first time in an appellate court."  The Domingos argue that "the appellants in Bouley did not challenge whether the purchaser of the property was a good faith purchaser."  The Domingos maintain that "[u]nlike here, the adjudicative facts in Bouley were contained within the record on appeal."

In addition, citing to HRS § 641-2(b), the Domingos maintain that new evidence cannot be introduced in an appellate court and an appeal must be taken on the record.  The Domingos further contend that "allowing appellate courts to review evidence submitted after summary judgment has been granted would overturn well-settled Hawai'i law."  Thus, the Domingos assert that "the ICA committed grave error" by "dismissing the

---

14      Because the Domingos correctly argue that the ICA should have temporarily remanded the case to the circuit court for an evidentiary hearing to determine if BBNY was a third-party, good-faith purchaser, this memorandum opinion does not address the Domingos' additional arguments on certiorari.

Domingos' appeals after adjudicating evidence outside the record introduced for the first time on appeal and finding that BBNY is a good faith purchaser . . . ."

On November 14, 2022, Wilmington filed a response to the Domingos' application for writ of certiorari. As relevant here, Wilmington notes that the Domingos maintain "that the ICA could not make a determination on whether BBNY was a third-party, good-faith purchaser, as [the Domingos] assert that this evidentiary determination must be remanded to the Circuit Court." According to Wilmington, the ICA correctly noted that "this issue was addressed in Onaga." Wilmington contends that "[t]herein, the third-party good-faith purchasers intervened while the appeal was pending and moved to dismiss based upon mootness, and the Hawaii Supreme Court made the determination that the appeal was moot without a remand to the circuit court."

The Domingos filed a reply on November 21, 2022.

### III. DISCUSSION

**A. The Domingos correctly argue that the ICA should have temporarily remanded the case to the circuit court to determine whether BBNY is a third-party, good-faith purchaser.**

On certiorari, the Domingos argue that the ICA improperly adjudicated a disputed "factual issue based upon new evidence not contained within the record on appeal." As discussed below, HRS § 641-2(b) limits an appellate court's

15

review of a case to the record and thus prohibits new evidence from being introduced in an appellate court in order to resolve a disputed issue of fact.  In addition, this court's decision in Onaga does not stand for the proposition that an appellate court can make a factual finding that a party is a third-party, good-faith purchaser.

### 1.   HRS § 641-2(b)

The Domingos argue that, pursuant to HRS § 641-2(b), the ICA was not permitted to accept and consider new evidence on appeal in order to resolve a disputed issue of fact.  HRS § 641-2(b) (2016) provides:

> [(b)] Every appeal shall be taken on the record, and no new evidence shall be introduced in the supreme court. The appellate court may correct any error appearing on the record, but need not consider a point that was not presented in the trial court in an appropriate manner.  No judgment, order, or decree shall be reversed, amended, or modified for any error or defect, unless the court is of the opinion that it has injuriously affected the substantial rights of the appellant.

(Emphasis added.)  The plain language of HRS § 641-2(b) prohibits an appellate court from accepting and considering new evidence.[15]  Here, Wilmington filed a Motion to Dismiss and exhibits before the ICA, which the ICA accepted and considered. In particular, the ICA noted that "Wilmington submit[ted]

---

[15]    Although Hawaiʻi Revised Statutes § 641-2(b) states that "no new evidence shall be taken in the supreme court," this court has previously noted that "no new evidence shall be taken in the [appellate] court." Weinberg v. Dickson-Weinberg, 123 Hawaiʻi 68, 79 n.8, 229 P.3d 1133, 1144 n.8 (2010)); see also Garcia v. Fernandez, 146 Hawaiʻi 627, 463 P.3d 1284 at *1 n.4 (App. 2020).

16

declarations and exhibits with its motion [to dismiss] to show that it sold and conveyed the property to BBNY, that a Special Warranty Deed was recorded on January 4, 2022, and a Corrective Special Warranty Deed was recorded on March 7, 2022, both in the Land Court." However, the attachments to Wilmington's Motion to Dismiss were never presented to the circuit court and were not part of the record on appeal because Wilmington sold the Property to BBNY after the Domingos filed the notices of appeal.[16] Thus, the ICA improperly resolved a disputed issue of fact and dismissed the Domingos' appeal based on new evidence not contained within the record on appeal. Instead, the ICA should have temporarily remanded the case to the circuit court for an evidentiary hearing to determine whether BBNY was a third-party, good-faith purchaser.

### 2. Hawai'i case law

As Wilmington points out,[17] the ICA relied on Onaga to conclude that a remand was not necessary to determine whether

---

[16] The Domingos filed both notices of appeal in 2018, and Wilmington did not sell the Property to BBNY until around December 2021. Thus, evidence that BBNY purchased the Property was not part of the record in the instant case until Wilmington filed the Motion to Dismiss in the ICA.

[17] It appears that the Domingos mistakenly note that the ICA relied on DB Private Wealth Mortg., Ltd. v. Bouley, 138 Hawai'i 141, 377 P.3d 1059 (App. 2016) in considering Wilmington's new evidence on appeal and determining that BBNY was a third-party, good-faith purchaser. Instead, the ICA relied on Bouley to determine that BBNY was a third-party, good-faith purchaser despite purchasing the Property from Wilmington instead of directly from the foreclosure sale.

17

BBNY was a third-party, good-faith purchaser.  In a footnote, the ICA stated

> The Domingos also argue that the matter must be remanded to the Circuit Court for an evidentiary hearing to determine whether BBNY is a good-faith purchaser because "[t]his Court is not a court where evidence can be taken." However, in Onaga, the Ferraras intervened while the case was on appeal and moved to dismiss, asserting the appeal was moot because they had purchased the property.  140 Hawai'i at 360, 400 P.3d at 561.  The Hawai'i Supreme Court determined the appeal was moot without remanding to the circuit court for fact finding.  Id.

However, the ICA's reliance on Onaga was misplaced.

In Onaga, the Circuit Court of the First Circuit granted Bank of New York Mellon's (BONY) motion for summary judgment for foreclosure against Onaga.  140 Hawai'i at 360-62, 400 P.3d at 560-63.  Onaga filed an initial appeal (CAAP-13-2287), "challenging the circuit court's order granting BONY's motion for summary judgment."  Id. at 362, 400 P.3d at 563.  The Ferraras, who were initially not a party to the foreclosure action, purchased the property at a public auction, which the circuit court confirmed.  Id.  Onaga then appealed from the circuit court's order confirming the sale of the property to the Ferraras (CAAP-14-426, the second appeal).  Id.  While the second appeal was pending, the ICA issued an SDO in Onaga's first appeal vacating the circuit court's order granting BONY's motion for summary judgment.  Id. at 363, 400 P.3d at 564.

The Ferraras then intervened in the second appeal and filed a motion to dismiss, noting that Onaga failed to obtain a

18

stay or post a supersedeas bond pending appeal.  Id.  The ICA denied that motion and the Ferraras filed a second motion to dismiss, attaching a certificate of title, commissioner's deed, and mortgage executed by the Ferraras and recorded in land court.  Id.  The ICA took judicial notice of the three attachments to the Ferraras' second motion to dismiss, but concluded Onaga's appeal was not moot.  Id. at 364, 400 P.3d at 565.

On certiorari, this court did not directly address the issue of whether an appellate court can consider new evidence on appeal to determine if a party is a third-party, good-faith purchaser, as no party raised that issue.  Id. at 364-70, 400 P.3d at 565-70.  Rather, this court determined that Onaga's appeal was moot because the Ferraras' certificate of title "conclusively established [their] title to the property."  Id. at 368, 400 P.3d at 569.  In addition, this court stated in a footnote: "[w]hen the Ferraras purchased the Property, the circuit court had already determined in the consolidated proceedings that BONY had a first priority lien on the Property.  Thus, at the time of the purchase, there would not have been an 'infirmity in the title' based on Onaga's mortgage."  Id. at 367 n.13, 400 P.3d at 568 n.13.

Here, although Wilmington correctly points out that the Onaga court determined that an appeal was moot without a

19

remand to the circuit court, Onaga is distinguishable from this case for two reasons.

First, the Ferraras purchased the property at issue in Onaga from a public auction and the circuit court confirmed the Ferraras' purchase of the property. Id. at 362, 400 P.3d at 563. It thus appears that the Ferraras' purchase of the property was contained within the record on appeal, and no party contested that the Ferraras purchased the property in good faith. See id. Here, Wilmington purchased the property from the foreclosure auction and later sold it to BBNY while the Domingos' appeal was pending. In addition, the Domingos explicitly argued that BBNY did not purchase the property in good faith. Thus, in contrast to Onaga, evidence that a third-party had purchased the property in good faith was presented for the first time in the ICA when Wilmington filed its Motion to Dismiss. Moreover, the Ferraras were the third-party in Onaga and purchased the property at a foreclosure auction, while mortgagee Wilmington purchased the property at the foreclosure auction in the instant case.

Second, the Ferraras had a certificate of title demonstrating that they owned the property, which this court focused on to determine that Onaga's appeal was moot. Id. at 364-69, 400 P.3d at 566-70. Here, the certificate of title Wilmington presented with its Motion to Dismiss states that

Wilmington was the owner of the Property.  In contrast to Onaga, Wilmington did not provide a certificate of title that conclusively established BBNY had title to the property.  Id. at 368, 400 P.3d at 569.  Thus, the instant case is distinguishable from Onaga and the ICA mistakenly relied on Onaga to dismiss the Domingos' appeal as moot.

### IV.  CONCLUSION

For the foregoing reasons, the ICA's August 26, 2022 Amended SDO is vacated and the case is remanded to the ICA with instructions to temporarily remand the case to the circuit court for an evidentiary hearing to determine whether BBNY is a third-party, good-faith purchaser.

DATED:  Honolulu, Hawai'i, February 15, 2023.

Frederick J. Arensmeyer                /s/ Mark E. Recktenwald
for petitioners
                                       /s/ Paula A. Nakayama
David B. Rosen
for respondent                         /s/ Sabrina S. McKenna

                                       /s/ Michael D. Wilson

                                       /s/ Todd W. Eddins

